IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| PATRICIA BARBERA,<br><br>    Plaintiff,<br><br>v.<br><br>WMC MORTGAGE CORP., et al.,<br><br>    Defendants. | No. C 04-3738 SBA<br><br>**ORDER**<br><br>[Docket No. 111] |

This matter is before the Court on Defendants' WMC Mortgage Corp., WMC Finance Co., and WMCDirect (collectively "Defendants") motion to dismiss Plaintiff Patricia Barbera's ("Plaintiff") Second Amended Complaint ("SAC") for failure to state a claim upon which relief can be granted. Having read and considered the arguments presented by the parties in the papers submitted to the Court, the Court finds this matter appropriate for resolution without a hearing. The Court hereby GRANTS Defendants' motion to dismiss. Plaintiff's third, fourth and fifth claims are DISMISSED WITH PREJUDICE. The case is REMANDED to the Superior Court of the State of California in and for the County of San Francisco.

**BACKGROUND**

**A.**     **Factual Background**[1]

**1.**     **The Parties**

Plaintiff is a 73-year old woman residing at all material times in the County of Marin, California.

---

[1] The following facts are taken from Plaintiff's SAC.

Defendant WMC Mortgage Corp. ("WMC") is an entity formed in part by Defendant Apollo Management L.P.  WMC is in the business of making subprime loans on residential property and also acts as the administrator for those loans.  Defendant WMCDirect, owned and operated by WMC, is an online nationwide business services website for mortgage brokers.  SAC ¶ 3.  On June 14, 2004, Defendant GE Consumer Finance Co., the consumer lending unit of the General Electric Company, purchased Defendant WMC Finance Co., including Defendants WMC and WMCDirect, from affiliates of Apollo Management L.P.  SAC ¶ 4.

**2.    Allegations**

In June of 1997, Plaintiff was in a "desperate financial situation" and obtained a loan from WMC for $322,500.  SAC ¶ 13.  On June 12, 1997, Plaintiff executed the loan documents, at which time "defendants failed to provide to Plaintiff two written notices of Plaintiff's right to rescind within three days of closing, and defendants failed to prepare and deliver accurate disclosures that were mandated" under the Truth in Lending Act, 15 U.S.C. section 1601 *et seq.*  SAC ¶ 14.

On May 19, 1998, WMC notified Plaintiff that it had not received proof of her renewal of the hazard insurance policy on Plaintiff's home.  SAC ¶ 15.  Despite numerous telephone calls from Plaintiff to WMC, and verification provided to WMC by Plaintiff's insurance company that a copy of Plaintiff's insurance policy had been mailed to WMC, WMC "force-place[d] a substitute policy from another hazard insurance company at Plaintiff's expense."  *Id.*  This new policy had a premium of $2,242, nearly three times the annual premium of Plaintiff's policy.  *Id.*

In January of 1999, Plaintiff received a letter from WMC stating that WMC had received confirmation of Plaintiff's hazard insurance coverage and that WMC had cancelled both the force-placed insurance and its charge to Plaintiff for that policy.  *Id.* ¶ 16.  However, WMC in fact did not cancel the $2,242 charge to Plaintiff's account and continued to impose an annual charge on Plaintiff's account for this hazard insurance.  *Id.* ¶ 17.

On August 19, 1999, WMC served on Plaintiff a ten-day default notice, listing the amount alleged due on Plaintiff's mortgage, but, according to Plaintiff, the listed amounts due were false.  *Id.* ¶ 18.  On November 5, 1999, using these excessive amounts as a pretext, WMC and its foreclosure

2

agent, Millennium Foreclosure Services, LLC ("Millennium")[2], served Plaintiff with a notice of default in the amount of $42,114.79. *Id.* On December 4, 1999, Plaintiff sent a detailed letter to WMC and Millennium, which constituted a "qualified written request" within the meaning of Real Estate Settlement Procedures Act ("RESPA") 12 U.S.C. section 2605(e), whereby she denied owing the amount shown in the default notice and renewed her previous oral requests to WMC for an accurate accounting. *Id.* ¶ 19. Plaintiff alleges WMC violated RESPA beginning in June of 1999 through March 1, 2002 by failing to respond to Plaintiff's oral requests for an accounting, and failing to acknowledge or to respond within the statutory time limits to Plaintiff's "qualified written request."[3] *Id.* ¶ 21. Furthermore, WMC continued to bill Plaintiff for improper charges and began to carry out a foreclosure sale of Plaintiff's home based upon these improper charges. *Id.*

On February 11, 2000, Plaintiff received from Millennium a Notice of Trustee's sale, recorded on February 7, 2000 citing a sale date of March 2, 2000 in the amount of $372,316.39. *Id.* ¶ 23.

On February 27, 2000, Plaintiff sent via facsimile to WMC a copy of a telegram informing WMC that it had failed to respond to Plaintiff's previous letters, had failed to provide an accurate accounting, and had violated various laws and regulations. *Id.* ¶ 24. On March 1, 2000, WMC supplied Plaintiff with a statement of history of payments on the loan, but Plaintiff contends the statement was incomprehensible. *Id.* ¶ 25.

On March 2, 2000, Plaintiff notified WMC that she had filed a Chapter 13 bankruptcy petition and verified that the foreclosure had been cancelled. *Id.* ¶ 26. On April 11, 2000, Plaintiff asserts that, in violation of the automatic bankruptcy stay, WMC filed a Notice of Trustee's Sale

---

[2] Millennium is not a party in this action.

[3] 12 U.S.C. section 2605(e) of RESPA states a loan servicer shall provide a written response acknowledging receipt of the "qualified written request" within 20 days, and shall respond to such a request within 60 days, excluding legal public holidays, Saturdays, and Sundays. *See* 12 U.S.C. § 2605(e); SAC ¶ 20.

3

scheduled for May 10, 2000.  *Id.*[4]

### B. Procedural History

Plaintiff filed the initial complaint in this case on July 23, 2004 in San Francisco Superior Court against WMC, WMC Finance Co., Apollo Management L.P., WMCDirect, GE Consumer Finance, Fairbanks Capital Corp., Fairbanks Capital Holding Corp., and California Land Title Company of Marin ("Cal Land").  On September 3, 2004, the action was removed to this Court.  On January 7, 2005, after several stipulated extensions of time to respond to the complaint, Cal Land filed an Answer to the Complaint.

On January 10, 2005, then defendants Fairbanks Capital Corporation and Fairbanks Capital Holding Corporation (collectively "Fairbanks") filed a motion for summary judgment, in which they claimed Plaintiff's suit was barred under the principles of res judicata and release because Plaintiff was a member of a nationwide class action, which challenged the same conduct, and which was subsequently settled.  Because Plaintiff did not dispute that she was a member of the prior class

---

[4] Plaintiff alleges additional facts raised for the first time in her opposition to Defendants' motion. Specifically, Plaintiff alleges: (1) Defendants "postdated receipt of payments, to make it appear that they were delinquent and late charges are applied in addition to other obtuse designations" (Pl. Opp. filed Oct. 11, 2005, ¶ 5); (2) Defendants "misapplied the extra which I included with my payments" (*Id.* ¶ 7); (3) Defendants "had [Plaintiff's] bankruptcy stay lifted by use of false figures" (*Id.* ¶ 8); (4) "on adjustable interest rate notices, [Defendants] failed to include: index used, index rate, interest rate, (current and projected), and margin applied" (*Id.* ¶ 10); (5) Defendants harassed Plaintiff with automatic message telephone calls (*Id.* ¶ 11); (6) Defendants refused to provide Plaintiff with information concerning the amount due under her loan (*Id.* ¶ 12); (7) on February 24, 2000, Plaintiff's attorney "faxed a factual protest and 'let's talk' letter" to Defendants regarding the February 11, 2000 Notice of Trustee's Sale, to which there was no response (*Id.* ¶ 19); (8) on March 2, 2000 Plaintiff was informed by her attorney that her attorney had spoken with a representative of Defendants who stated "the total arrears is $68,811.61, which includes an advance for homeowners insurance in the amount of $7,411.04 and foreclosures fees of $3,403.29" (*Id.* ¶ 21); (9) in May 2000 WMC "reported to the Credit Bureaus that [Plaintiff] was delinquent in the amount of $72,050" (*Id.* ¶ 26); (10) on December 15, 2000, Plaintiff sent WMC "a one line notice of rescission taken verbatim from the unexecuted form which [she] had received, 'I wish to cancel'" (*Id.* ¶ 29); (11) On January 5, 2001, Plaintiff received a letter dated January 2, 2001, from WMC Senior Vice President & General Counsel, Michael L. Mayer, which included an executed Notice of Right to Cancel and informed Plaintiff that her cancellation notice was "invalid and of no legal effect." (*Id.* ¶ 30).

None of the above facts are alleged in Plaintiff's SAC but are raised for the first time in her opposition. "It is axiomatic that the complaint may not be amended by briefs in opposition to a motion to dismiss." *Car Carriers, Inc. v. Ford Motor Co.*, 745 F.2d 1101, 1107 (7th Cir. 1984). That Plaintiff is proceeding *in pro per* does not render the rules of the Court inapplicable. *See King v. Atiyeh*, 814 F.2d 565, 567 (9th Cir. 1987) (Pro per litigants must follow the same procedural rules as represented parties.) Consequently, the Court shall limit its review to those facts properly alleged in the SAC, and not those newly raised in Plaintiff's opposition.

4

1   action against Fairbanks, which involved identical claims and ended in a final judgment on the
2   merits, by Order dated March 7, 2005, the Court granted Fairbanks' motion for summary judgment,
3   finding that Plaintiff's claims against Fairbanks were barred by the doctrines of res judicata and
4   release [docket no. 71.]

5   On March 15, 2005, Plaintiff filed a First Amended Complaint ("FAC"). The FAC included
6   additional allegations against Defendant WMC, an additional cause of action for an accounting
7   against WMC and Fairbanks, named Cal Land in the third cause of action for violations of, *inter
8   alia,* the Truth in Lending Act, and added two additional causes of action against Cal Land for
9   breach of fiduciary duty and negligence. On March 21, 2005, Fairbanks filed a motion for entry of
10  final judgment pursuant to Federal Rule of Civil Procedure 54. On April 12, 2005, Plaintiff filed an
11  opposition to Fairbanks' motion, and also filed a motion for leave to amend the FAC. In her request
12  for leave to amend the FAC, Plaintiff sought to add new allegations against Fairbanks and the other
13  defendants. On May 26, 2005, the Court denied Plaintiff's Motion for Leave to Amend the FAC,
14  struck those portions of the FAC that added allegations against Fairbanks and Cal Land, and granted
15  Fairbanks' motion for entry of final judgment [docket no. 96.] Plaintiff was ordered to file a Second
16  Amended Complaint that removed the stricken allegations.

17  On June 1, 2005, Plaintiff substituted herself as counsel in place of her previously retained
18  counsel [docket no. 97.]

19  Plaintiff filed the SAC on August 10, 2005 [docket no. 108.] On August 25, 2005,
20  Defendants filed the instant motion to dismiss. Defendants also filed a Request for Judicial Notice.[5]

---

[5] In Defendants' Request for Judicial Notice, Defendants request that the Court take judicial notice of exhibits: (A) Plaintiff's complaint on file in state court, *Barbera v. WMC Mortgage. Corp.,* San Francisco Superior Court Civil Action No. 322066, filed June 11, 2001; (B) this Court's Order dated March 1, 2005, Granting Fairbanks' Motion for Summary Judgment; (C) this Court's Order dated May 26, 2005, Granting Fairbanks' Motion for Entry of Final Judgment; (D-E) Copies of Assembly Bill No. 292 (1970 Reg. Sess. (Jan. 21, 1970)) and Assembly Bill No. 292 (1970)) (as amended Aug. 7, 1970); (F) Notice of Entry of Order Granting Defendant WMC's Motions *In Limine* Nos. 1, 2 & 4, Denying WMC's Motion *In Limine* 3, and Denying Plaintiff's Motion for Leave to Amend, entered by Judge Busch in Plaintiff's action in San Francisco Superior Court; (G) text of Proposition 2; and (H) California Department of Real Estate website printout.

Federal Rule of Evidence 201 authorizes the court to judicially notice only those "adjudicative facts" that are either "(1) generally known within the territorial jurisdiction of the trial court or (2) capable of accurate and ready determination by sources whose accuracy cannot reasonably be

5

1  Plaintiff filed an opposition with this Court on October 11, 2005.[6]

## LEGAL STANDARD

**A.   Rule 12(b)(6)**

Under Federal Rule of Civil Procedure 12(b)(6), a motion to dismiss may be granted if it appears beyond a doubt that the plaintiff "can prove no set of facts in support of his claim which would entitle him to relief." *Conley v. Gibson*, 355 U.S. 41, 45-46 (1957).  For

---

questioned." Fed. R. Evid. 201(b).  "Adjudicative facts are usually those facts that are in issue in a particular case." *Korematsu v. United States*, 584 F. Supp. 1406, 1414 (N.D. Cal. 1984) (Patel, J.).

With regard to Exhibit A, Defendants do not make clear to this Court for what purpose they are requesting this Court take judicial notice of Plaintiff's state court complaint.  Defendants simply state Plaintiff has filed, with and without counsel, several civil actions against WMC and the parties have conducted considerable discovery since the first action was filed in June of 2001.  Defs. Mot. 2:14-20. The existence of Plaintiff's state court complaint does not concern any "facts in issue" in this case, nor is it relevant to the instant motion to dismiss.  Consequently, the request is DENIED as to Exhibit A.

As the March 1, 2005 and May 26, 2005 Orders are part of the Court's own docket in this matter, a formal request for judicial notice is unnecessary.

Defendants cite to Exhibits D, E and F in support of their argument that Plaintiff's Consumer Legal Remedies Act ("CLRA") claim must fail because credit transactions do not fall within CLRA's purview.  Defs. Mot 13:5-24.  The CLRA is a California statute which was irrelevant to the Court's analysis and disposition of Plaintiff's federal claims.  Therefore, the request for judicial notice is DENIED as to Exhibits D, E & F.

Finally, Defendant cites to Exhibits G & H in support of their argument that Plaintiff's claim of usury must fail as California has exempted from the usury laws licensed real estate brokers by the State of California, and, Defendants argue, WMC was a licensed real estate broker at the time the loan was made.  The usury cause of action is based on state law.  Again, given the Court's focus upon Plaintiff's federal claims, these exhibits are irrelevant.  For these reasons, the request for judicial notice is DENIED as to Exhibits G & H.

[6] Defendants contend Plaintiff served upon them a different version of her opposition brief than the one she filed with this Court.  Defendants attached the version of the opposition they received as Exhibit A to the Declaration of Seta Arabian in Support of Defendants' Reply ("Arabian Decl.")  In the version filed with the Court on October 11, 2005, in the "Foreclosure-bankruptcy issues" section, Plaintiff includes two new paragraphs that are not present in the copy faxed to the Defendants and attached to the Arabian Decl.  These new sections concern Plaintiff's research into WMC's past and current litigation, and what Plaintiff believes to be the relevant California laws that have been violated by the conduct of Defendants alleged in the SAC.  Additionally, in the opposition filed with the Court but not in the version faxed to Defendants, Plaintiff attached copies of: 1) an article entitled "Loans Cost Minorities More" by David Olinger and Jeffrey A. Roberts, Denver Post Staff Writers, Feb. 27, 2001; 2) a transcript of the testimony of Professor Cathy Lesser Mansfield before the Committee on Banking and Financial Services, United States House of Representatives, May 24, 2000, at the Rayburn House Office Building; and 3) copies of statements received by Plaintiff from WMC and Select Portfolio Servicing. Inc.

These additional paragraphs and material were the only differences between the briefs received by Defendants and filed with the Court and were not germane to the Court's analysis of Defendants' motion to dismiss as they did not address the substantive issues raised by Defendants' in their motion. Consequently, for purposes of deciding this motion, the Court restricted its review to the opposition served upon Defendants.

1 purposes of such a motion, the complaint is construed in a light most favorable to the
2 plaintiff and all properly pleaded factual allegations are taken as true. *Jenkins v.*
3 *McKeithen*, 395 U.S. 411, 421 (1969); *Everest and Jennings, Inc. v. American Motorists Ins.*
4 *Co.*, 23 F.3d 226, 228 (9th Cir. 1994). All reasonable inferences are to be drawn in favor of
5 the plaintiff. *Jacobson v. Hughes Aircraft*, 105 F.3d 1288, 1296 (9th Cir. 1997).

When a complaint is dismissed for failure to state a claim, "leave to amend should be granted unless the court determines that the allegation of other facts consistent with the challenged pleading could not possibly cure the deficiency." *Schreiber Distrib. Co. v. Serv-Well Furniture Co.*, 806 F.2d 1393, 1401 (9th Cir. 1986). The court should consider factors such as "the presence or absence of undue delay, bad faith, dilatory motive, repeated failure to cure deficiencies by previous amendments, undue prejudice to the opposing party and futility of the proposed amendment." *Moore v. Kayport Package Express*, 885 F.2d 531, 538 (9th Cir. 1989). Of these factors, prejudice to the opposing party is the most important. *See Jackson v. Bank of Hawaii*, 902 F.2d 1385, 1387 (9th Cir. 1990) (citing *Zenith Radio Corp. v. Hazeltine Research, Inc.*, 401 U.S. 321, 330-31 (1971)). Leave to amend is properly denied "where the amendment would be futile." *DeSoto Yellow Freight Sys.*, 957 F.2d 655, 658 (9th Cir. 1992).

## ANALYSIS

The SAC asserts the following federal claims against WMC: (1) violation of the Truth in Lending Act ("TILA"), 15 U.S.C. §§ 1601 *et seq.*,; (2) violation of the Real Estate Settlement Procedures Act, 12 U.S.C. §§ 2601, *et seq.*; and (3) violation of the Fair Debt Collection Practices Act, 15 U.S.C. §§ 1692 *et seq.* ("FDCA").

**A.    Plaintiff's First Federal Claim - Violation of the Truth In Lending Act**

1.    The Statutes

In her third cause of action Plaintiff alleges violation of the Truth in Lending Act

("TILA"), HOEPA, and Regulation Z.[7]  SAC, ¶¶ 41-43.  15 U.S.C. § 1635(a), the provision of TILA upon which Plaintiff relies, states in full:

> Disclosure of obligor's right to rescind. Except as otherwise provided in this section, in the case of any consumer credit transaction (including opening or increasing the credit limit for an open end credit plan) in which a security interest, including any such interest arising by operation of law, is or will be retained or acquired in any property which is used as the principal dwelling of the person to whom credit is extended, ***the obligor shall have the right to rescind the transaction until midnight of the third business day following the consummation of the transaction or the delivery of the information and rescission forms required under this section together with a statement containing the material disclosures required under this subchapter***, [15 U.S.C. §§ 1601 et seq.] whichever is later, by notifying the creditor, in accordance with regulations of the Board, of his intention to do so. The creditor shall clearly and conspicuously disclose*,* in accordance with regulations of the Board, to any obligor in a transaction subject to this section the rights of the obligor under this section. The creditor shall also provide, in accordance with regulations of the Board, appropriate forms for the obligor to exercise his right to rescind any transaction subject to this section.

15 U.S.C. § 1635(a) (emphasis added).  15 U.S.C. § 1639(a)(1), the provision of HOEPA upon which Plaintiff relies, states in relevant part:

> Specific disclosures. In addition to other disclosures required under this subchapter [15 U.S.C. §§ 1601 et seq.], for each mortgage referred to in section 1602(aa) of this title, the creditor shall provide . . . disclosures in conspicuous type size . . .

15 U.S.C. § 1639(a)(1).  Finally, Regulation Z requires a "business which offers or extends credit" to make certain disclosures:

> Purpose. The purpose of this regulation is to promote the informed use of consumer credit by requiring disclosures about its terms and cost. The regulation also gives consumers the right to cancel certain credit transactions that involve a lien on a consumer's principal dwelling, regulates certain credit card practices, and provides a means for fair and timely resolution of credit billing disputes.

12 C.F.R. § 226.1(b) & (c).

    2.    <u>Analysis</u>

Plaintiff seeks both rescission of her loan and damages.  15 U.S.C. § 1640(e).

---

[7] The acronym "HOEPA" stands for "Home Ownership and Equity Protection Act" of 1994. HOEPA, which took effect on October 1, 1995, provides special protections for consumers who obtain high-rate or high-fee loans secured by their principal dwellings by requiring creditors to provide certain material information at least three days before the loan is consummated, prohibiting the use of certain loan terms, and barring specified practices.

1  Plaintiff's right of rescission is governed by 15 U.S.C. § 1635(f). This section provides, in
2  relevant part:

> An obligor's right of rescission shall expire three years after the date of consummation of the transaction or upon the sale of the property, whichever occurs first, notwithstanding the fact that the information and forms required under this section or any other disclosures required under this part have not been delivered to the obligor.

15 U.S.C. § 1635(f). Civil penalties under TILA and HOEPA are subject to a one-year statute of limitations. Plaintiff's loan closed in June of 1997. Plaintiff filed suit in state court on July 23, 2004, which was removed to this Court in September of 2004, over seven years later. Consequently, both Plaintiff's claim for damages, as well as her right to rescind, are time-barred by these sections.

Plaintiff's SAC conclusorily asserts "[a]ny statute of limitations applicable to these violations has been tolled under the doctrine of what is called equitable tolling." SAC ¶ 42.[8] Plaintiff's defense to the statute of limitations is unpersuasive. "The equitable tolling doctrine has been applied by the Supreme Court in certain circumstances, [ ] but it has been applied sparingly." *Scholar v. Pacific Bell*, 963 F.2d 264, 268 (9th Cir.1992) (citing *Irwin v. Veterans Admin.*, 498 U.S. 89, 111 S.Ct. 453, 457-58, 112 L.Ed.2d 435 (1990)). "Courts have been generally unforgiving, however, when a late filing is due to claimant's failure 'to exercise due diligence in preserving his legal rights.' " *Id.* (citing *Irwin*, 111 S.Ct. at 458). "Equitable tolling focuses primarily on the plaintiff's excusable ignorance of the limitations period." *Lehman v. United States*, 154 F.3d 1010, 1016 (9th Cir. 1998).

---

[8] In her opposition she states 11 U.S.C. § 108 extends the statute of limitations for commencing or continuing an action by the debtor. However, as Plaintiff concedes, that statute is available for trustees suing to protect a bankruptcy estate. Plaintiff does not assert she is a trustee.
Additionally, Plaintiff argues that the force-placed insurance charge "could constitute a new transaction which would require new disclosures and a new consummation date." Pl. Opp. Sec. IV ¶ 6. Plaintiff does not indicate when that consummation date would have occurred, either the date of the charge or the date Plaintiff discovered the charge on her account. Construing the facts in the most favorable light to Plaintiff, the latest date for which she could allege the force-placed insurance charge constituted a new transaction would be the date she learned of it, March 2, 2000. That was over four years prior to the filing of the instant complaint in state court. Therefore, even if Plaintiff were able to argue that imposition of the force-placed insurance charge constitutes a new transaction requiring new disclosures and a new consummation date, she is nevertheless barred by the statute of limitations.

9

Here, Plaintiff's SAC fails to plead such facts. As a preliminary matter, the factual predicate for her claim that WMC failed to provide her with certain documents should have been known to her in 1997, well before July 2004. In her opposition, Plaintiff states that she signed the "Notice of Right to Cancel" on June 12, 1997 and acknowledged, by her signature, receipt of two copies of the this notice. Pl. Opp. ¶ 1. This acknowledgment is evidence that Plaintiff received two copies of this notice, or, at a minimum, was aware that she was entitled to two copies of this notice at the time of the loan closing. Plaintiff alleges that she was not given any documents on June 12, 1997, contrary to her signed acknowledgment, but concedes that when she did receive her copy of her loan documents on June 19, 1997, she "put it away without inspecting it," and years passed before she inspected what those documents contained. *Id.* Plaintiff's failure to inspect the documents, especially in light of her signed acknowledgment, does not constitute "excusable ignorance of the limitations period" justifying imposition of equitable tolling. Thus, this claim is barred by the statute of limitations and is DISMISSED with prejudice.

**B.      Plaintiff's Second Federal Claim - Violation of the Real Estate Settlement Procedures Act**

In her fourth cause of action, Plaintiff alleges the following acts by WMC violated the Real Estate Settlement Procedures Act ("RESPA"): "kickbacks, referral fees, unnecessary escrow accounts for taxes and hazard insurance, improper or inaccurate reporting to credit bureaus, failure to disclose the transfer of the servicing of Plaintiff's loan account, failure to respond to acknowledge 'payments from a borrower' and to acknowledge 'making the payments of principal and interest as may be required pursuant to the terms of the loan,' and other home mortgage lending practices that tend to cause excessive borrowing costs for home loan borrowers." SAC ¶ 47. Plaintiff additionally alleges that WMC violated RESPA "[b]eginning June 1999, through March 1, 2002" by failing to respond to Plaintiff's oral requests and failing to acknowledge or respond to Plaintiff's qualified written requests." SAC ¶ 21. Defendants respond that this claim is time barred.

The applicable statutes of limitations for claims brought pursuant to RESPA are

10

found in 12 U.S.C. section 2614. "Any action pursuant to the provisions of section 2605, 2607, or 2608 of this title may be brought in the United States district court within 3 years in the case of a violation of section 2605 of this title and 1 year in the case of a violation of section 2607 or 2608 of this title from the date of the occurrence of the violation." *See* 12 U.S.C. §2614.

### 1. Section 2607

Plaintiff's allegations of kickbacks and referral fees are covered under section 2607(a).[9] By its terms, section 2607(a) prohibits the giving or receipt of fees or kickbacks "incident to or part of a real estate settlement service involving a federally related mortgage loan." *See* 12 U.S.C. § 2607(a). "Settlement services" is defined as any "service provided in connection with a real estate settlement." *See* 12 U.S.C. § 2602(3). No where in Plaintiff's SAC does she allege where, when, how or from whom WMC received kickbacks or referral fees. Rather it is a bald assertion unsupported by facts. The facts alleged by Plaintiff fail to demonstrate the inapplicability of the statute of limitations. Plaintiff received her mortgage loan in June of 1997. Section 2614 required her to bring her claim alleging kickbacks or referral fees within one year, by June of 1998. This claim is time barred and is therefore DISMISSED with prejudice.

### 2. Section 2605

The remaining RESPA allegations are subject to the 3-year statute of limitations as the conduct she alleges by WMC concerns "servicing of mortgage loans and administration of escrow accounts." *See* 12 U.S.C. § 2605.[10]

---

[9] This provision states: "No person shall give and no person shall accept any fee, kickback, or thing of value pursuant to any agreement or understanding, oral or otherwise, that business incident to or a part of a real estate settlement service involving a federally related mortgage loan shall be referred to any person." 12 U.S.C. § 2607(a).

[10] The other statute referenced in section 2614, section 2608, is inapplicable to this case. Section 2608 states: "No seller of property that will be purchased with the assistance of a federally related mortgage loan shall require directly or indirectly, as a condition to selling the property, that title insurance covering the property be purchased by the buyer from any particular title company." Plaintiff's complaint does not involve the sale of her home or allegations that she was required to

Plaintiff's allegations are inconsistent and insufficient to overcome the time bar for several reasons.  First, the latest date for which Plaintiff alleges violative conduct on the part of WMC is April 11, 2000, over four years prior to the filing the instant complaint.  Thus, her claims are time-barred.  Second, Plaintiff's loan was transferred to another entity for servicing in July of 2000; Plaintiff does not explain, in her SAC or opposition, how WMC violated RESPA through March 1, 2002, *after* the loan had been transferred.  Third, RESPA imposes obligations upon a party upon written requests, not oral.  *See* 12 U.S.C. § 2605(e)(1)(B).  The only qualified written request[11] Plaintiff asserts in her SAC occurred on December 4, 1999, more than three years prior to the filing of the instant complaint.  Fourth, even assuming Plaintiff's delayed discovery of the transfer of her loan in September, 2003 was reasonable such that the doctrine of equitable tolling applied, Plaintiff learned of the transfer ten months prior to the filing of this suit.  *See Santa Maria v. Pac. Bell*, 202 F.3d 1170, 1178 (9th Cir. 2000) ("[E]quitable tolling will serve to extend the statute of limitations for filing suit until the plaintiff can gather what information he needs.")  Plaintiff does not provide any justification for the delay between her discovery of the transfer, and the filing of the instant complaint.  Therefore, she has not proven she is entitled to invoke the doctrine of equitable tolling.

For all these reasons, this claim is DISMISSED with prejudice.

## C. **Plaintiff's Third Federal Claim - Violation of the Fair Debt Collection Practices Act**

In her fifth cause of action, Plaintiff alleges WMC's acts and conduct violated the Fair Debt Collection Practices Act ("FDCPA"), 15 U.S.C. § 1692 *et seq*.  SAC ¶ 51.  Plaintiff generally alleges all of the acts and conduct by WMC violate the FDCPA,

---

purchase title insurance from a particular company.

[11] 12 U.S.C. 2605(e)(1)(B) states in relevant part: "For purposes of this subsection, a qualified written request shall be a written correspondence, other than notice on a payment coupon or other payment medium supplied by the servicer, that (i) includes, or otherwise enables the servicer to identify, the name and account of the borrower; and (ii) includes a statement of the reasons for the belief of the borrower, to the extent applicable, that the account is in error or provides sufficient detail to the servicer regarding other information sought by the borrower."

including "the improper or inaccurate reports to credit borrowers" by WMC.[12]  *Id.*  Here, again, WMC responds that Plaintiff's claim is time-barred.  Additionally, even if the claim were not time-barred, WMC argues it is misplaced since the FDCPA only prohibits certain activities of debt collectors, not creditors such as WMC.

### 1. Statute of Limitations

"An action to enforce any liability created by this subchapter may be brought in any appropriate United States district court without regard to the amount in controversy, or in any other court of competent jurisdiction, within one year from the date on which the violation occurs."  15 U.S.C. § 1692k(d).  As with her other allegations, Plaintiff merely asserts that the violations giving rise to the claim "continue through the present time."  SAC ¶ 51.  She does not offer any evidence of the nature of the acts of WMC which form the basis of the assertion, nor when they occurred.  Moreover, given WMC's transfer of the servicing of Plaintiff's loan to another party in 2000, the Court is unaware of any facts Plaintiff could allege that would fall within the year prior to her filing the instant complaint.

### 2. FDCPA Applies Only to "Debt *Collectors*"

Alternatively, WMC argues that even were this cause of action not time barred by the statute of limitations, Plaintiff's claim still fails as the FDCPA is inapplicable to parties collecting their own debt.

The FDCPA regulates debt collectors rather than creditors.  *Thomas v. Law Firm of Simpson & Cyback,* 392 F.3d 914, 916-17 (7th Cir. 2004).  The term "debt collector" means any person who "regularly collects or attempts to collect, directly or indirectly, debts owed or due or asserted to be owed or due to *another*."  15 U.S.C. § 1692a(6) (emphasis added).  The term "creditor" means "any person who offers or extends credit creating a debt or to whom a debt is owed . . . ."  15 U.S.C. 1692a(4).  Furthermore, the FDCPA exempts from its

---

[12] Plaintiff references 12 U.S.C. § 2605(3)(d) with respect to her allegation of "improper or inaccurate reports to credit borrowers."  SAC ¶ 51.  There is no 12 U.S.C. § 2605(3)(d).  In this same paragraph of the SAC, Plaintiff asserts a "loan servicer may not provide information regarding any overdue payment to any consumer reporting agency."  *Id.*  The SAC does not allege when, to whom, nor what information WMC provided to any consumer reporting agency regarding any overdue payments.  Thus the SAC is completely devoid of facts to support these allegations.

1  definition of debt collectors, "any officer or employee of a creditor while, *in the name of the*
2  *creditor*, collecting debts for such creditor." 15 U.S.C. § 1692a(6)(A) (emphasis added).
3  Because Plaintiff alleges activities by WMC regarding collection of payments owed to it
4  under the loan, i.e., it was WMC's debt it sought to recover from Plaintiff, WMC was not a
5  "debt collector" for purposes of the FDCPA. Thus, Plaintiff has no cognizable claim against
6  WMC on this ground.

   For these reasons, this claim is DISMISSED with prejudice.

**D.      Supplemental State Causes of Action**

When a case is properly removed on the basis of federal question jurisdiction, but the federal claims are subsequently eliminated from the case, the district court retains the discretion to remand the action to state court. *See Carnegie-Mellon Univ. v. Cahill*, 484 U.S. 343, 348 (9th Cir. 1991). In each case, and at every stage of the litigation, the federal court must consider and weigh the values of judicial economy, convenience, fairness, and comity in order to decide whether to exercise jurisdiction over a case involving pendent state-law claims. *Id.* at 349. When the balance of the relevant factors indicates that a case properly belongs in state court, such as when the federal claims have been resolved in the early stages of the litigation, the district court may decline the exercise of jurisdiction and remand the action to state court. *Id.* As the United States Supreme Court recognized in *United Mine Workers v. Gibbs*, 383 U.S. 715, 726 (1966), the district court's jurisdiction over state law claims "need not be exercised in every case in which it is found to exist . . . . Needless decisions of state law should be avoided as a matter of comity[.]" *Id.*

Plaintiff's third, fourth and fifth claims are the only claims alleged over which the Court has original jurisdiction. Those claims have been dismissed with prejudice. Moreover, since this litigation is in its initial stage, the concerns of "economy, convenience, fairness and comity" weigh in favor of declining to retain jurisdiction. *See Imagineering, Inc. v. Kiewit Pacific Co.*, 976 F.2d 1303, 1309 (9th Cir. 1992), *cert. denied*, 507 U.S. 1004 (1993). Therefore, the Court exercises its discretion and declines to assert supplemental jurisdiction over the remaining state law claims.

14

**CONCLUSION**

For the reasons stated above,

IT IS HEREBY ORDERED THAT Defendants' motion to dismiss is GRANTED. Plaintiff's third, fourth and fifth claims are DISMISSED WITH PREJUDICE.

IT IS FURTHER ORDERED THAT the case is REMANDED to the Superior Court of the State of California in and for the County of San Francisco. The clerk is directed to terminate any pending matters and to close the file.

IT IS SO ORDERED

IT IS SO ORDERED.

Dated: 1/19/06

SAUNDRA BROWN ARMSTRONG
United States District Judge